GARY M. RESTAINO
United States Attorney
District of Arizona
ADAM D. ROSSI
Assistant U.S. Attorney
AZ State Bar No. 028042
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: adam.rossi2@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR23-01694-TUC-RM (MAA) |
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT'S APPEAL FROM MAGISTRATE DETERMINATION OF DETENTION AND DANGEROUSNESS |
| vs. | |
| Michael Pengchung Lee, | |
| Defendant. | (Doc. 20) |

Plaintiff, United States of America, by and through its undersigned attorneys, hereby files this response in opposition to the defendant's Appeal from Magistrate Determination of Detention and Dangerousness. (Doc. 20.) For the following reasons the motion should be denied.

**I.     Factual and Procedural Background**

   *a. Offense Conduct and Indictment*

   Defendant Michael Pengchung Lee is charged in the Indictment with a violation of 18 U.S.C. § 875(c), Interstate Threats. (Doc. 14.) As alleged in the complaint, on October 22, 2023, Michael Pengchung Lee sent multiple Snapchat messages using the name "asianluluu" to a group chat threatening to commit a mass shooting at the University of Arizona. (Transcript of October 30, 2023, Detention/Dangerousness Hearing before Honorable Magistrate Judge Ambri, hereinafter "RT 10/30/23", pg. 13-15; *see also* the filed complaint, Doc. 1.) During the Snapchat conversation LEE stated:

- "Theres going to be a mass tragedy and atrocity at the UofA Soon".
- When asked what tragedy, Lee stated "a Mass shooting". When asked if he meant "at the UofA?" He said "sure is". When asked how he was planning on committing this mass shooting, Lee stated, "with an AR-15" and he stated "it's Arizona you can just buy one". A group chat member asked when Lee would purchase the gun Lee said "I'm not sure, probably right before, so my mom doesn't find it". When asked what day he would conduct the shooting he replied "damn I haven't decided yet".
- Lee went on to say, "The day of Retribution is upon us, I shall get revenge on all the chads and stacies!!" (suspected by agents to mean Fraternity and Sorority members). When he saw the females in the group chat screenshotting his posts he stated "fuck you stacies I was gonna give u a warning but now im not". Lee went on to state, "my alleged crimes? Im gonna commit a much worse crime…. Youll hear about it on the news". Lee further stated, "It's a solo mission, I'm not normal, I never have been, I'm severely autistic and mentally ill and was never accepted by society, I have no place in the world".
- Lee then told the group as a final message: "also the 10th anniversary of the day of retribution is may 23, 2024 btw, but isn't the UofA gonna be out of session by then?" Agents know that "the day of retribution" refers to the mass shooter Elliott Rogers, who killed sorority and fraternity members in 2014 and was a self-identified involuntary celibate (incel). On Michael Lee's Instagram page, he identifies as a former incel. Lee's reference to "chads" and "stacies" in earlier Snapchat messages are commonly used terms by incels.
- Lee finished his conversation on Snapchat by saying: "im gonna do it guys, my mind is made up and there's nothing u can do or say to stop me."
(RT 10/30/23, pg. 13-15; *see also* Doc. 1.)

Involuntary celibates, or "incels," are members of an online subculture based on their inability to find a romantic or sexual partner. They are mostly (nearly exclusively) males, and typically expresses extreme resentment and hostility toward those who are sexually active. They also subject to their ire perceived "alpha males," or sexually active males, referring to them as "chads," and refer to attractive, sexually active women as "stacys" or "stacies." Fraternity and sorority members are frequently identified as incels as being "chads" and "stacies." (*See* RT 10/30/23, pg. 13-14.)

Agents utilized the University of Arizona Police FLOCK License Plate Reader, and learned that Lee's vehicle was seen in the area of University Greek row on October 11, 12, 13, 14, 17, 18, 19, 20, and 21, 2023, from 9:00 pm to 1:00 am on various nights. (RT 10/30/23, pg. 19; *see also* Doc. 1.)

On October 23, 2023, a traffic stop for speeding was conducted on Lee. Post-*Miranda*, Lee admitted to being the author of the snapchat threats. Lee stated he was frustrated with his homelife and decided to "vent" to the group chat with his friends. He stated he was a former member of the incel community but was no longer. He attempted to

purchase a firearm two months ago but decided against it. Lee admitted he was aware the threats to commit a mass shooting were wrong and concerning. (RT 10/30/23, pg. 15-16; *see also* Doc. 1.)

After the defendant was arrested in this matter, agents learned Lee was arrested and indicted for state controlled substance offenses. During the service of a search warrant on the defendant's storage unit, agents found controlled substances, and a firearm. Notably, the defendant's step-father is a codefendant in his state controlled substance case. During the service of a search warrant on the defendant's residence, his mother and step-father's house, agents observed the defendant had been viewing bodycam footage of a mass shooting on his phone. (RT 10/30/23, pg. 17.) Agents in the state case also observed search history on the defendant's devices for mass shootings, sorority/fraternity housing, prominent members of a sorority, U.S. passport status, escape, and other items related to mass shootings. (*Id*.)

   b. Detention Proceedings

On October 26, 2023, Pretrial Services recommended the defendant be detained as both a flight risk and as a danger to the community. (Doc. 7, pg. 5.) As to the assessment for nonappearance, Pretrial Services found "The defendant poses a risk of nonappearance based upon the nature of the instant alleged offense, substance use history, mental health history, conflicting employment history, criminal history including failures to appear, and family ties to a foreign country." (*Id*.) As to the assessment for danger, Pretrial Services also found, "The defendant poses a danger to the community based upon the nature of the instant alleged offense, his substance use history, mental health history, history of assaultive behavior, and specific safety concerns for the community." (*Id*.)

On October 30, 2023, a Detention/Dangerousness Hearing was held before the Honorable Magistrate Judge Ambri. Based on the testimony of Special Agent Dan Douglass, the complaint, and the Pretrial Services Report, Judge Ambri ordered the defendant detained. As to risk of nonappearance, Judge Ambri found "the defendant is a

risk of non-appearance for reasons stated on the record." (Doc. 10.) Those included the defendant's prior failures to appear, the defendant's "research of flight and of escape in connection with the alleged crime," history of noncompliance with mental health treatment, and the seriousness of the allegations. (RT 10/30/23, pg. 49.) As to dangerousness, Judge Ambri further found that "the government has proven by clear and convincing evidence that the defendant is a danger to the community, based on the nature of the alleged offense, nature of the threats, internet searches, the testimony presented, mental health issues, substance abuse issues and criminal record." (Doc. 10; *see also* RT 10/30/23, pg. 48.) Accordingly, the defendant was ordered detained pending trial. (*Id*.)

For all the reasons stated by the United States at the detention/dangerousness hearing, and the Magistrate Judge's findings, the defendant's appeal should be denied.

**II.   Law and Argument**

A.   <u>The United States proffers new information material to release conditions that would permit the reopening of the detention order to rebut contentions by the defendant.</u>

The United States has continued its investigation into this matter, and has uncovered additional evidence material to release conditions regarding dangerousness that would permit the reopening of the issue of detention.

A detention hearing may be reopened before or after the court's ruling on a detention motion, at any time before trial if the judicial officer makes a factual finding that information exists that was not previously known at the time of the hearing and that the information is material on the issue of whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of any other person and the community.  18 U.S.C. § 3142(f).  Thus, the moving party must establish two essential elements before the issue of detention may be reopened: 1) that information now exists that was not known at the time of the initial hearing, and 2) the new information is material to release conditions regarding flight or dangerousness. *United States v. Hare*, 873 F.2d 796

(5th Cir. 1989) (testimony of defendant's family and friends is not new evidence to warrant reopening of detention).

Here, after the hearing, the United States received an extensive download of the defendant's Snapchat account pursuant to a federal warrant. The review of this material is ongoing. Agents have found two further conversations referring to committing to mass shooting, that clearly rebut the defendant's contention that he was "venting" and that he was no longer part of the involuntary celibate, "incel," movement or "has also now distanced himself from extreme positions and antisocial behavior and beliefs." (*See* Defendant's Appeal, Doc. 20, pg. 3-4; *see also* Doc. 1.) In the newly discovered chats, the defendant refers to "ER" or "ERing". (*See* Exhibits 1 and 2, *attached*.[1]) ER is the initials of self-described incel Elliot Rodger. Elliot Rodger committed the University of California, Santa Barbara mass shooting in 2014, killing four by gunfire and wounding fourteen others (seven additional victims by using his car) after stabbing three men to death, emailing a manifesto, and uploading a "Retribution" video to the internet, explaining his motivations. The offense was committed on May 23, 2014, and is referred to in the incel community as "the Day of Retribution," which the defendant referred to in his threats in this case on October 22, 2023.

In a Snapchat conversation with another individual, NE, the defendant stated on September 22, 2023, that "I'm gonna be ering [Elliot Rodger-ing] here very soon bro." When NE stated he hoped the defendant wouldn't harm "anyone who is like a fast food worker etc…", the defendant replied "Only chads and staciesn1." (Exhibit 1, pg. 3. Note: "N1" stands for "nice one.") On September 24, 2023, NE asked if the defendant was "still thinking of going the Supreme Gentleman route?" (*Id*., at pg. 2.) Elliot Rodger is referred to in the incel community as "the Supreme Gentleman." The defendant replied "Sure am",

---

[1] The exhibits are redacted to protect the identities of the other individuals in the chats. Also, the chats are listed by earliest date and time last, therefore newer chats appear higher on the page, as provided by Snapchat. The dates and times are also listed on the chats for reference.

"I'm going to do it tonight bro", and "Don't go near sorority row." (*Id.*) Clearly the defendant did not do so, but followed up later with the statements, "I just wanted to be loved bro," and "But if I can't have that then I must exact revenge on the society that denied me that." (*Id.*, at pg. 1.)

In a Snapchat group chat, separate from the group chat where the threats charged were made, on October 17, 2023, the defendant complained about "chads" and stated, "Let's see them act like that when an ar 15 is pointed at their face." (Ex. 2, pg. 35.) Lee further stated, "I'm gonna er those bros sup." (*Id.*, at pg. 34.) On October 20, 2023, the defendant offered, "When I er I'm gonna save a bullet for myself bros." (*Id.*) On October 21, 2023, the defendant goes on to discuss possibly having sexual contact with a minor (*Id.*, pg. 31-33), and gang raping a coed (*Id.*, at pg. 28). The defendant again on October 21 expressed hatred of "chads" and stated, "I can't wait to see the look on their face when I er those homies" and "Knowing that's the last thing they'll ever see." (*Id.*) The conversation continued on that date, and the defendant expressed, "I just think gang raping a Stacy is the way to go at this point bros" and "If those Stacie's won't clap us then we must force them to clap n1." (*Id.*, at pg. 25.) At least one of the participants in the chat pushed back at the defendant on this, and the defendant replied, "What if we raped the chads Stacie's and er the chads" and "That would show those homies who's the real alpha of the group." (*Id.*, at pg. 24.) When pressed again by the other member of the chat, who stated "Youd live your alpha days out in a cell", the defendant stated the following:

- Dude I thought of a genius idea
- What if we Uber some Stacie's
- Then kidnap them
- During the Uber ride
- And rape them
- NQ
- N1
- That would show the chads who they're fuckojf with
- Classically
- Not if we er afterward
- And save a bullet for ourselves
- N1

(*Id.*, at pg. 23-22.)

- 6 -

1    When the other member of the chat stated his current situation should encourage him to better his life, the defendant responded with "What about ering to get out of tusuck", "The fast way n1", and "And taking a bunch of chads with you m." (*Id*., at pg. 19.) later on the same date, during a discussion on making money the defendant referenced the activities that led to his arrest in the state for controlled substance offenses, stating "Uber is shit money anyway" and "I think storage locker trapping is the move." (*Id*., at pg. 12; the defendant is alleged to have been storing and selling ("trapping") controlled substances in a rented storage unit.) The defendant continued, "Well it doesn't much matter anyway", "I'm gonna er soon", and "Why should I be giving the homies I'm gonna er rides?" (*Id*., at pg. 12.) The defendant went on to reference drive by shootings, and completing a drive by in order to have revenge on a "chad" that punched him, and that he was going to "er" a fraternity. (*Id*., at pg. 9-12.)

The other member of the chat that had confronted him earlier on these statements wrote that, "I dont think ER is the right way guy", because "your life will be over." (*Id*., at pg. 8.) The defendant replied "Sure would be" and "But so would chads." (*Id*.) the defendant continued that he'd been "outcompeted by the chads… For the Stacies" and "It is what it is guy." (*Id*., at pg. 7.)

On October 22, 2023, the same date of the charged offense, the defendant made similar statements in this other group chat, and referenced the group chat wherein he made the threat for which he is charged:

- I'm gonna er

. . .

- There's gonna be a mass tragedy and atrocity at the u of a soon
- You'll hear about it on the news n1
- There's gonna be a mass tragedy and atrocity at the u of a soon bros

. . .

- I told some Stacie's i was gonna er

. . .

- Hello bros.. (October 23, 2023)
- The Stacie's threatened to call the 50 on me for saying I was gonna web (12:14 AM)
- Er (12:14 AM)
- Fuckin rofl!! (12:15 AM)
- I told them I would er then first (12:15 AM)
- Them (12:15 AM)

- For doing so (12:15 AM)
   (*Id.*, at pg. 3-5.)

The defendant then expressed concern that the police would be looking for him, and tried to arrange another place to stay, other than his mom's house, "to get away from my mom" with others in the group chat stating "It could be the only thing that prevents me from erring." (*Id.*, at pg. 2.)

This new evidence clearly rebuts what the defendant told agents, that he was a former incel, and his now contention that he "distanced himself from extreme positions and antisocial behavior and beliefs." (See Doc. 20, pg. 4.) Evidence now shows that days before the offense, the defendant was discussing rape, kidnap, and murder, all while utilizing incel language and justifying such heinous crimes through incel ideology. Importantly, the offense and these newly discovered statements were all made while under the supervision of his parents, which makes his compliance, and their supervision, highly suspect. This evidence was not previously known prior to the detention/ dangerousness hearing, and the Court can and should reopen the hearing to accept this evidence to rebut the contentions of the defendant at the hearing and on appeal.

> B. There is a substantial risk of nonappearance and danger to the community in this case and the defendant should not be released when taking into consideration the factors outlined in 18 U.S.C. § 3142(g).

Should the Court not accept this new evidence, there is still more than clear and convincing evidence that was presented to Judge Ambri at the hearing justifying detention. The Magistrate properly weighed the evidence presented, and the 18 U.S.C. §3142(g) factors weigh heavily in favor of detention.

> 1. *The nature and circumstances of the offense charged, including whether the offense involves a violent crime, and a controlled substance - 18 U.S.C. § 3142(g)(1); and the weight of the evidence against the person - 18 U.S.C. § 3142(g)(2)*

The charge in this case, the interstate threat to commit a mass shooting at the

University of Arizona, is a crime of violence under this section, as defined under 18 U.S.C. § 3156(a)(4):

> the term "crime of violence" means— (A) an offense that has as an element of the offense the use, attempted use, *or threatened use of physical force against the person or property of another*.
> (18 U.S.C. § 3156(a)(4), *emphasis added*)

The defendant issued this threat with knowledge or reckless disregard of the substantial risk that his communications would be viewed as threatening violence. This is clear based on the defendant himself admitting to agents that the threats to commit a mass shooting were wrong and concerning. The evidence weighs heavily against the defendant, and the nature and circumstances of the offense are so egregious, that the defendant should remain held, and the appeal denied.

2. *Employment - 18 U.S.C. § 3142(g)(3)(A)*

It is unclear, but doubtful, that the defendant is still employed. Additionally, even while employed, the defendant was arrested with controlled substances packaged for sale, and a firearm, and clearly earned money selling those controlled substances, as noted by himself in the Snapchat group message.

3. *Length of residence in the community and family/community ties - 18 U.S.C. § 3142(g)(3)(A)*

The defendant is a naturalized citizen, with strong family ties to China. The defendant is also in the process of obtaining a travel visa to China. Further, the defendant's step-father, the husband of his mother, is the defendant's codefendant in the state case, and the step-father resides with the mother. Finally, the offense alleged in this case, and the state case, occurred while the defendant was under the supervision of his parents. What has now changed that would ensure his compliance with the law and orders of the Court? These community ties are not ties that will promote compliance by the defendant if he is released.

4. *Person's Character and Past Conduct to Include Criminal History - 18 U.S.C. § 3142(g)(3)(A)*

The defendant's criminal history includes two Failure to Appear convictions,

another Failure to Appear charge, which indicates to that he is a flight risk and danger to the community.

In 2015, the defendant was convicted of 2nd Degree Failure to Appear in Tucson Municipal Court. (Doc. 7, pg. 4.) In 2017, the defendant was again convicted of 2nd Degree Failure to Appear, this time in Pima County Justice Court. (*Id*.) In 2019, the defendant was charged with 2nd Degree Failure to Appear, which was dismissed and the defendant was convicted of Disorderly Conduct- Fighting, in Tucson Municipal Court. (*Id*). The defendant was arrested on controlled substance charges on September 6, 2023, and which are pending in Pima County Superior Court.

The defendant's criminal history alone should be enough for the court to find that the defendant is a flight risk and danger to the community, but taking into his extremist views, even without the new evidence, shows character concerns that warrant his detention.

These views are substantial for two reasons. First, in relation to the firearms, the defendant managed to obtain a firearm without purchasing it from a licensed dealer, which can be traced, and as seen in his numerous statements about wants to commit a mass shooting in the name of this ideology, the ability to obtain firearms show he is danger to the community. Second, he has clearly demonstrated his intention of following this ideology to its most extreme conclusion: an "ER" or mass shooting event, wherein he escapes or takes his own life. Taken together, the government believes this is clear evidence of extremist ideology mixed with capability and intent. This again shows that he is a continued danger to the community and that he has no intention of discontinuing his criminal activity.

5. *Person's Past Conduct Related to Substance Abuse - 18 U.S.C. § 3142(g)(3)(A)*

The defendant does a history of substance abuse, again while living with his mother, and unbeknownst to her. (Doc. 7, pg. 3-4.)

/ / /

6. *The nature and seriousness of the danger to any person or the community that would be posed by the person's release - 18 U.S.C. § 3142(g)(4)*

The United States would point to the fact that the defendant not only threatened to conduct a mass shooting, but also threatened those in the group chat for screenshotting his threat. If the Court accepts the new evidence, the defendant also laughed about it in a separate group chat. With or without the new evidence, the defendant clearly still subscribes to a violent and antisocial worldview, and declares it on social media messaging applications.

As to risk of nonappearance and dangerousness, the defendant is accused of threatening to commit a mass shooting at a respected educational institution, one that is very much the center of the Southern Arizona community. Further, this defendant is has consistently failed to appear for court appearances in other matters. (*See* Doc. 7.) Additionally, this defendant has shown himself incapable of following the orders of the courts, and to be a consistent danger to his community, all while living at home with his mother, the proffered third party custodian. *See United States v. Hir*, 517 F.3d 1081, 1093 (9th Cir. 2008) ("[T]he effectiveness of the proposed release conditions, or any conditions that might be imposed, necessarily depends on [the defendant's] good faith compliance" with those conditions.).

### III. Conclusion

The defendant has presented no evidence, nor claimed, that the Magistrate misapplied the law or facts regarding the finding of the defendant being a flight risk and danger to the community. Even if the defendant did make such a showing, the government has shown that individualized factors demonstrate that no condition or combination of conditions will reasonably ameliorate the flight risk or danger to the community that exists as to this defendant. The Court can and should rely on the lower court's finding, or find on its own that the evidence presented in the detention/ dangerousness hearing was clear and convincing that the defendant should remain held.

There is a clear danger that the defendant will be a flight risk and will continue to pose a danger to the community. Therefore, the government respectfully requests this appeal be denied.

Respectfully submitted this 22nd day of November, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Adam D. Rossi*

ADAM D. ROSSI
Assistant U.S. Attorney

Copy of the foregoing served electronically or by other means this 22nd day of November, 2023, to:

Thomas E. Higgins, Esq.
Attorney for defendant