GARY M. RESTAINO
United States Attorney
District of Arizona
ADAM D. ROSSI
Assistant U.S. Attorney
AZ State Bar No. 028042
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: adam.rossi2@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR23-01694-TUC-RM (MAA) |
|---|---|
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT'S MEMORANDUM IN SUPPORT OF APPEAL OF DETENTION AND DANGEROUSNESS FINDING |
| vs. | |
| Michael Pengchung Lee, | |
| Defendant. | (Doc. 29) |

Plaintiff, United States of America, by and through its undersigned attorneys, hereby files this response in opposition to the defendant's Memorandum in Support of Appeal of Detention and Dangerousness Finding. (Doc. 29.) For the following reasons the appeal should be denied.

**I.    Factual and Procedural Background**

*a.  Offense Conduct and Indictment*

The United States hereby incorporates the facts asserted in its previous response (Doc. 25) to the defendant's Appeal from Magistrate Determination of Detention and Dangerousness. (Doc. 20.)

As to the defendant's reliance on the "Minority Report argument," of note, the Ninth Circuit jury instruction clearly states that "The government need not prove that the defendant intended to carry out the threat." (Ninth Circuit Jury Instruction 8.13 Transmitting a Communication Containing a Threat to Kidnap or Injure (18 U.S.C. §

875(c)).)

    b.  *Detention Proceedings*

The United States hereby incorporates the facts asserted in its previous response (Doc. 25) to the defendant's Appeal from Magistrate Determination of Detention and Dangerousness. (Doc. 20.)

A hearing was held before this Court on November 30, 2023, wherein the Court granted the defendant until December 15, 2023, to file an appeal brief. (Doc. 28.) The Court also granted leave for the United States to file a response ten (10) days after the filing of the brief. (*Id*.) The defendant filed the instant memorandum on December 15, 2023. (Doc. 29.)

For all the reasons stated by the United States at the detention/dangerousness hearing, and the Magistrate Judge's findings, the defendant's appeal should be denied.

**II.    Law and Argument**

The United States also incorporates the law and argument section of its previous response. (Doc. 25.)

    A.  <u>The United States proffers new information material to release conditions that would permit the reopening of the detention order to rebut contentions by the defendant.</u>

The United States has continued its investigation into this matter, and has uncovered additional evidence (even past what was presented in the previous response) material to release conditions regarding dangerousness that would permit the reopening of the issue of detention.

A detention hearing may be reopened before or after the court's ruling on a detention motion, at any time before trial if the judicial officer makes a factual finding that information exists that was not previously known at the time of the hearing and that the information is material on the issue of whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of any other person and

the community. 18 U.S.C. § 3142(f). Thus, the moving party must establish two essential elements before the issue of detention may be reopened: 1) that information now exists that was not known at the time of the initial hearing, and 2) the new information is material to release conditions regarding flight or dangerousness. *United States v. Hare*, 873 F.2d 796 (5th Cir. 1989) (testimony of defendant's family and friends is not new evidence to warrant reopening of detention).

Here, after the hearing, the United States received an extensive download of the defendant's Snapchat account pursuant to a federal warrant. The review of this material is ongoing. Agents have found an additional conversation (in addition to the other two previously proffered in Doc. 25) referring to committing to mass shooting, that clearly rebut the defendant's contention that he was "venting" and that he was no longer part of the involuntary celibate, "incel," movement or "has also now distanced himself from extreme positions and antisocial behavior and beliefs." (*See* Defendant's Appeal, Doc. 20, pg. 3-4; *see also* Doc. 1.)

In a Snapchat conversation with another individual, EH, the defendant stated on June 12, 2023, in response to a suggestion by EH that the defendant should flee to China after an "associate" of the defendant was arrested that "Yes I could." (*See* Exhibits 1, pg. 1-2, *attached*.[1]) On July 7, 2023, the defendant again referenced mass murderer and incel hero Elliot Rodger, and said "I'm gonna ER." (Exhibit 1, pg. 23.) The next day when EH suggests the defendant go to therapy, the defendant replied, "Therapy is a scam." (*Id*., at pg. 28.) On July 11, 2023, EH sent the defendant an inspiration message from a disabled individual, the defendant frequently claims to be autistic in his messages, and the defendant responded, "He should ER." (*Id*., at pg. 31-33.) On August 17, 2023, the defendant again stated, "I'm going to ER." (*Id*., at pg. 35.) On September 8, 2023, the defendant later referenced his arrest on the state case, and stated "Damn it was a good run. 4 years of

---

[1] The exhibit is redacted to protect the identities of the other individuals in the chats. The dates and times are also listed on the chats for reference.

allegedly selling Jawns to chads!" (*Id*., at pg. 37.)

Notably the defendant on September 11, 2023, stated again "I'm gonna er," but added, "With a twist!" (*Id*., at pg. 43.) When asked by EH what the twist is, the defendant replied "I'm gonna do it at the police station!! Suicide by cop!!" (*Id*., at pg. 44.) The defendant expressed anger at the police for taking "away a homies only means to survive," and then discussed if he could claim the seized items were not his, despite the storage locker being in his name. (*Id*., at pg. 44-45.) Importantly, the defendant admitted the firearm recovered in the storage unit was his, and stated regarding police questioning, "And no when they asked if I purchased my firearm from Pablo." (*Id*., at pg. 46.) This directly contradicts what the defendant has been arguing regarding firearms. The defendant went on to admit he has a firearm "Yes I do," and stated, "but they didnnt charge me for it." (*Id*., at pg. 46.) Two days later, on September 14, 2023, the defendant sent EH a link to the Isla Vista killings, which were committed by Elliot Rodger. (*Id*.) The defendant then stated, "I might be following in homies footsteps soon!" (*Id*., at pg. 47.) The defendant also agreed that he was under the watch of the police. (*Id*.) The defendant then apparently took issue with what EH said and stated he would ER EH too. (*Id*., at pg. 47-48.)  The defendant stated that the police wouldn't know what "ER" meant, and EH responded that EH would show them the "incel forums." (*Id*., at pg. 48.)

On the same date, the defendant admitted he was never diagnosed with autism, and that he had lied to EH about it. (*Id*., at pg. 49.) He also then stated, "I'm going on a rampage," and "On sorority row bro!!!!" (*Id*.) When asked why, the defendant responded, "Damn for the same reason er did." (*Id*., at pg. 50.) the defendant then went on to defend ER, and called him a "hero." (*Id*., at pg. 51.) Won September 18, 2023, the defendant stated the following:

- I wanted a happy healthy life full of love and sex
- But if I'm unable to have such a life
- Then I will have to choice but to exact revenge that denied it to me..
- No choice
- On the society that
- I will purify the world of everything that is wrong with it

- 4 -

- On the day of retribution I will truly be a powerful god
- Punishing everyone I deem to be impure and deprived
- Depraved

(*Id.*, at pg. 54-55.)

Later the same day, the defendant stated, "I'm currently writing my manifesto is that chill?" (*Id.*, at pg. 59.) The defendant went on to explain, "It's just about how I hate chads and Stacie's." (*Id.*) On September 22, 2023, the defendant similarly stated, "I'm going to get revenge on the society that has failed me bro!!!!" (*Id.*, at pg. 66.) On September 24, 2023, the defendant made similar statements:

- I shall spare you on the day of retribution
- And your homies
- But the chads I don't know must go!!!

(*Id.*, at pg. 68.)

This additional new evidence clearly rebuts what the defendant told agents, that he was a former incel, and his now contention that he "distanced himself from extreme positions and antisocial behavior and beliefs." (See Doc. 20, pg. 4.) Evidence now shows that days before the offense, the defendant was discussing rape, kidnap, and murder, all while utilizing incel language and justifying such heinous crimes through incel ideology. See Doc. 25, pg. 6.) Importantly, the offense and these newly discovered statements were all made while under the supervision of his parents, which makes his compliance, and their supervision, highly suspect. This evidence was not previously known prior to the detention/ dangerousness hearing, and the Court can and should reopen the hearing to accept this evidence to rebut the contentions of the defendant at the hearing and on appeal.

B. There is a substantial risk of nonappearance and danger to the community in this case and the defendant should not be released when taking into consideration the factors outlined in 18 U.S.C. § 3142(g).

The United States hereby incorporates this section from its previous response. (Doc. 25.) Should the Court not accept this additional new evidence, there is still more than clear and convincing evidence that was presented to Judge Ambri at the hearing justifying detention. The Magistrate properly weighed the evidence presented, and the 18 U.S.C. §3142(g) factors weigh heavily in favor of detention.

1. *<u>The nature and circumstances of the offense charged, including whether the offense involves a violent crime, and a controlled substance - 18 U.S.C. § 3142(g)(1); and the weight of the evidence against the person - 18 U.S.C. § 3142(g)(2)</u>*

The charge in this case, the interstate threat to commit a mass shooting at the University of Arizona, is a crime of violence under this section, as defined under 18 U.S.C. § 3156(a)(4):

> the term "crime of violence" means— (A) an offense that has as an element of the offense the use, attempted use, *or threatened use of physical force against the person or property of another*.
> (18 U.S.C. § 3156(a)(4), *emphasis added*)

The defendant issued this threat with knowledge or reckless disregard of the substantial risk that his communications would be viewed as threatening violence. This is clear based on the defendant himself admitting to agents that the threats to commit a mass shooting were wrong and concerning. Further, in the additional new evidence, the defendant wrote that he as considering doing a mass shooting at a police station. The evidence weighs heavily against the defendant, and the nature and circumstances of the offense are so egregious, that the defendant should remain held, and the appeal denied.

2. *<u>Employment - 18 U.S.C. § 3142(g)(3)(A)</u>*

It is unclear, but doubtful, that the defendant is still employed. Additionally, even while employed, the defendant was arrested with controlled substances packaged for sale, and a firearm, and clearly earned money selling those controlled substances, as noted by himself in the Snapchat group message. The defendant also discussed using his position as an Uber driver to rape, kidnap, and murder his clients. Employment does not appear to affect the defendant's ability to follow the law or societal norms.

3. *<u>Length of residence in the community and family/community ties - 18 U.S.C. § 3142(g)(3)(A)</u>*

The defendant is a naturalized citizen, with strong family ties to China. The defendant is also in the process of obtaining a travel visa to China. Further, the offense

alleged in this case, and the state case, occurred while the defendant was under the supervision of his parents. Finally, the defendant wrote in this new chat that he was considering fleeing to China. These community ties are not ties that will promote compliance by the defendant if he is released.

    4. *Person's Character and Past Conduct to Include Criminal History - 18 U.S.C. § 3142(g)(3)(A)*

The defendant's criminal history includes two Failure to Appear convictions, another Failure to Appear charge, which indicates to that he is a flight risk and danger to the community. The defendant's criminal history alone should be enough for the court to find that the defendant is a flight risk and danger to the community, but taking into his extremist views, even without the new evidence, shows character concerns that warrant his detention.

These views are substantial for two reasons. First, in relation to the firearms, the defendant managed to obtain a firearm without purchasing it from a licensed dealer, which can be traced, and as seen in his numerous statements about wants to commit a mass shooting in the name of this ideology, the ability to obtain firearms show he is danger to the community. In the new chat, the defendant specifically references how he owned the firearm seized in the state case. Second, he has clearly demonstrated his intention of following this ideology to its most extreme conclusion: an "ER" or mass shooting event, wherein he escapes or takes his own life. Taken together, the government believes this is clear evidence of extremist ideology mixed with capability and intent. This again shows that he is a continued danger to the community and that he has no intention of discontinuing his criminal activity.

    5. *Person's Past Conduct Related to Substance Abuse - 18 U.S.C. § 3142(g)(3)(A)*

The defendant does a history of substance abuse, again while living with his mother, and unbeknownst to her. (Doc. 7, pg. 3-4.)

    6. *The nature and seriousness of the danger to any person or the community that*

*would be posed by the person's release - 18 U.S.C. § 3142(g)(4)*

The United States would point to the fact that the defendant not only threatened to conduct a mass shooting, but also threatened those in the group chat for screenshotting his threat. If the Court accepts the new evidence, the defendant also laughed about it in a separate group chat, and in yet another chat stated his intention to conduct the mass shooting at a police station in retaliation for the state charges. With or without the new evidence, the defendant clearly still subscribes to a violent and antisocial worldview, and declares it on social media messaging applications.

As to risk of nonappearance and dangerousness, the defendant is accused of threatening to commit a mass shooting at a respected educational institution, one that is very much the center of the Southern Arizona community. Further, this defendant is has consistently failed to appear for court appearances in other matters. (*See* Doc. 7.) Additionally, this defendant has shown himself incapable of following the orders of the courts, and to be a consistent danger to his community, all while living at home with his mother, the proffered third party custodian. *See United States v. Hir*, 517 F.3d 1081, 1093 (9th Cir. 2008) ("[T]he effectiveness of the proposed release conditions, or any conditions that might be imposed, necessarily depends on [the defendant's] good faith compliance" with those conditions.).

C. Special Agent Douglass did not lie to the Court.

The defendant states in his motion that Special Agent Douglass presented false information to Judge Ambri, going as far as calling them "outright lies." (Doc. 29, pg. 2.) This is incorrect for the reasons stated below, which track the defendant's claimed three misrepresentations.

1. *The step-father is a codefendant statement*

The defendant stated that he has no idea where Special Agent Douglass came up with this. (Doc. 29, pg. 3.) Special Agent Douglass was informed of this from the University of Arizona Police Department, who in turn got that information from the

- 8 -

Counter Narcotics Alliance (CNA) officers involved in that case. Initially, CNA told UAPD that the stepfather was offering to bankroll the defendant out of crime. UAPD unintentionally misconstrued that to mean the stepfather was bankrolling the defendant *for* crime, which was just discovered on December 19, 2023. Accordingly, Special Agent Douglass was not lying or intentionally misleading the Court, but was told information that later turned out to be partially incorrect, as the stepfather clearly knew the defendant was dealing drugs while living at home, and did not stop him. The statement was elicited, inarticulately by this AUSA, regarding the defendant's possible placement with his parents and has no bearing on the defendant's threat, nor his other statements consistent with said threat. Therefore, this information should be corrected, but also disregarded as the mistake was unintentional, and has no bearing on the threat the defendant poses to the community or flight risk.

### 2. *The statement regarding Mr. Lee's license plate being spotted numerous times on campus around Greek Row.*

Neither Special Agent Douglass nor this AUSA claimed the defendant was "stalking fraternities" on Greek Row at the University of Arizona. (Doc. 29, pg. 3; *see* RT 10/30/23, pg. 19.) Even in argument this AUSA stated that taken in the context of the threat, this was concerning. (RT 10/30/23, pg. 37.) Since there was no such accusation, this information should be disregarded. Especially now, considering the chat in which the defendant discussed using his position as an Uber driver to commit heinous crimes of kidnapping, rape, and murder.

### 3. *The statement regarding Mr. Lee having mental health issues.*

The defendant claims that the Special Agent Douglass stated the defendant is "disturbed mentally." (Doc. 29, pg. 4.) This AUSA made the quoted statement in argument, and was based on the statements the defendant made in the chat charged, and what he told the arresting agents. The United States believes this is a reasonable interpretation of the evidence, especially considering the new evidence presented in the original response and

in the instant response. Notably, the government agrees that the defendant has not been seen by a mental health professional as an adult, and has no diagnosed mental health issues, as the defendant himself admitted to agents and in the new chat discussed in the instant response. The argument was that the defendant is "someone who is, at the very least, disturbed mentally, has kind of detached from their home base of safety" is reasonable under the circumstances and this argument should be disregarded.

### III.    Conclusion

The defendant has presented no evidence, nor claimed, that the Magistrate misapplied the law or facts regarding the finding of the defendant being a flight risk and danger to the community. Even if the defendant did make such a showing, the government has shown that individualized factors demonstrate that no condition or combination of conditions will reasonably ameliorate the flight risk or danger to the community that exists as to this defendant. The Court can and should rely on the lower court's finding, or find on its own that the evidence presented in the detention/ dangerousness hearing was clear and convincing that the defendant should remain held.

There is a clear danger that the defendant will be a flight risk and will continue to pose a danger to the community. Therefore, the government respectfully requests this appeal be denied.

Respectfully submitted this 20th day of December, 2023.

>GARY M. RESTAINO
>United States Attorney
>District of Arizona
>
>*s/ Adam D. Rossi*
>
>ADAM D. ROSSI
>Assistant U.S. Attorney

Copy of the foregoing served electronically or by
other means this 20th day of December, 2023, to:

Thomas E. Higgins, Esq.
Attorney for defendant