**THOMAS E. HIGGINS**
LAW OFFICES OF THOMAS E. HIGGINS P.L.L.C.
325 West Franklin Street
Tucson, Arizona 85701
(520) 624-8663
higginsinvail@aol.com
State Bar No: 04324
Attorney for Michael Lee

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | 4:23-cr-01694-RM-1 |
| Plaintiff, | |
| vs. | Sentencing Memorandum |
| Michael Pengchung Lee, | Hon. Rosemary Marquez |
| Defendant | |

COMES NOW, the Defendant, Michael Lee, by and through undersigned counsel, and submits to this court his Sentencing Memorandum. Mr. Lee respectfully asks this Court to impose a just and mitigated disposition of 10 months imprisonment, with credit for time served, followed by 3 years of supervised release. Sentencing on this matter is scheduled for July 2, 2024.

**RESPECTFULLY SUBMITTED** this **28th** day of **June 2024.**

　　　　　　　　　　　　　　　 */S/ Thomas E. Higgins*
　　　　　　　　　　　　　　　THOMAS E. HIGGINS
　　　　　　　　　　　　　　　Attorney for Michael Lee

**MEMORANUDM OF POINTS AND AUTHORITIES**

I.   **Factual Background**

Between September 2023 and October 2023, Michael Lee's social isolation, mental illness, and familial turmoil came to a head, resulting in Mr. Lee lashing out over social media and threatening to do a mass shooting at the University of Arizona. For years, Mr. Lee felt alone and unwanted an immigrant from a culturally very different world, abused and abandoned by his father, and dominated by his controlling mother. He bounced from school to school, even attending four different high schools. Unable to build real relationships, Mr. Lee sought solace in playing video games and eventually in drugs. Mr. Lee's mother reported that Mr. Lee was diagnosed with Aspergers at age 11, and bipolar disorder, depression, anxiety, as a teenager. After years of social rejection, drug use, and untreated mental illness, Mr. Lee revealed to his mother that he wanted to transition from being a biological male to a biological female. Mr. Lee's mother rejected Mr. Lee's decision and chalked it up to mental illness.

In September 2023, Mr. Lee was arrested on drug charges in state court. Shortly after, around October 22, 2023, Mr. Lee sent messages over social media to a group of people, some of whom were friendly with Mr. Lee. Mr. Lee never actually purchased a gun like he said he would (AR-15), and when the police arrested him, he explained that he was just venting and that he regretted his actions. Mr. Lee pleaded guilty to making interstate threats. Mr. Lee's plea agreement stipulates to a sentencing range of 10-16 months.

II.     **Argument and Recommendation**

1)      **Legal Standard**

The applicable Federal Sentencing Guideline range is the "starting point and the initial benchmark" of a sentencing calculation. *Gall v. United States*, 552 U.S. 38, 39 (2007). The Guidelines are advisory, so courts may not employ a "rigid mathematical formula[,]" but rather should impose a "reasonable" sentence. *See id.* at 38. Courts should also consider the factors listed in 18 U.S.C. § 3553(a) in determining an appropriate sentence. *See Gall*, 552 U.S. at 39. "A substantively reasonable sentence is one that is 'sufficient, but not greater than necessary' to accomplish § 3553(a)(2)'s sentencing goals." *United States v. Ressam*, 679 F.3d 1069, 1089 (9th Cir. 2012) (quoting *United States v. Crowe*, 563 F.3d 969, 977 (9th Cir. 2009).

"In determining substantive reasonableness, we are to consider the totality of the circumstances, including the degree of variance for a sentence imposed outside the Guidelines range." *Ressam*, 679 F.3d at 1089 (quoting *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008). Furthermore, variances are not subject to the Guideline analysis for departures. *See id.* at 49. Sentencing judges "'exercise a wide discretion' in the types of evidence they may consider when imposing sentence and that '[h]ighly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.'" *Pepper v. United States*, 562 U.S. 476, 480 (2011) (quoting *Williams v. New York*, 337 U.S. 241, 246-47 (1949). The principle expressed in *Williams* is further "codified" in 18 U.S.C. § 3553(a). *Pepper*, 562 U.S. at 480.

"[I]t is possible for a sentence to pass procedural muster and yet be substantively unreasonable." *United States v. Autery*, 555 F.3d 864, 870 (9th Cir. 2009). Therefore, while a District Court must give serious consideration before departing from the Guidelines, it does not even need to rely on "extraordinary circumstances" to justify a downward variance. *See id.* at 872. As to the any notice requirement for a variance, "[a] district court is not required under Rule 32(h) to give advance notice before imposing a sentence outside of the advisory guideline range if the sentence is the result of a variance." *United States v. Moschella*, 727 F.3d 888, 893 (9th Cir. 2013). "'Departure' is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines." *Irizarry v. United States*, 553 U.S. 708, 714 (2008). Therefore, "departure precedent does not bind district courts with respect to variance decisions, it is merely persuasive authority." *See U.S. v. Chase*, 560 F.3d 828, 832 (8th Cir. 2009).

"The court shall impose a sentence sufficient, but not greater than necessary, . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553(a)(2). The Court should also consider "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" *Id.* at § 3553(a)(2).

**2)      A Lengthy Prison Term Will Not Serve Societal Interests.**

Mr. Lee requests a just disposition of 10 months imprisonment with credit for time served, and 3 years of supervised release. Mr. Lee's problem is addiction and mental illness and he and the public are better served by a disposition that favors supervision over imprisonment. Mr. Lee's mental illness is long-established, affecting him from his teenage years. His mental illness is also separate from his drug abuse, likely resulting from his parents' mental, emotional, and physical abuse against him.

Mr. Lee's antisocial behavior in this case is also likely the product of his upbringing. Mr. Lee cannot blame his own choices here on his parents, but the facts of his family dynamic and mental illness brought him to this level of anger and frustration and handicapped his ability to make a better decision. To better protect the public and Mr. Lee, it is crucial that Mr. Lee receive treatment for mental illness and drug addiction. In fact, Mr. Lee never really did anything but make outlandish threats.  Nothing happened but the threats were a direct result of his mental and emotional state.

Mr. Lee's problem is not a desire for violence; his problem is addiction and mental illness, neither of which are criminal. By the time he was arrested for these threats, he had already cooled off and freely admitted to the arresting officers that he was frustrated over his social life and had associated with an online community of people with similar frustration and outlook on life, but that he had distanced himself from this association and regretted his threats.

Mr. Lee also did not take any action to carry out a shooting. Although he talked about killing fraternity and sorority members, he never threatened to kill any specific

person. He also never bought a gun to use in the threatened shooting. Lastly, he did not stalk anyone or surveil any hypothetical targets. The Government cites his presence around Greek Row on several nights as a concern about his intentions, however Mr. Lee was there for a legitimate purpose, he was working as an Uber driver and had several customers who lived at or visited Greek Row. It is also noteworthy that Mr. Lee had several customers who were presumably members of fraternities and sororities, but he never hurt or even threatened one of them. Without a doubt, university shootings are serious and threats regarding the safety of schools should not be taken lightly. Thankfully, Mr. Lee did not act on his threats. In determining how much time Mr. Lee should serve in prison, the Court should weigh in favor of Mr. Lee's request because he stopped his actions on his own accord; he did not harm anybody; and he acted this way because he is mentally ill and an addict- probably because of his abusive and socially isolated upbringing. A term of 10 months is enough to show Mr. Lee and others that mass shooting threats are no laughing matter. The 3 years of probation to follow will help Mr. Lee work on regulating his emotions in a healthy manner so he does not lash out in the same way again.

### III.   Conclusion

Therefore, Mr. Lee respectfully requests this Court sentence him to 10 months incarceration with credit for time served followed by 3 years of supervised release.

**RESPECTFULLY SUBMITTED** this **28th** day of **June 2024.**

 */S/ Thomas E. Higgins*
THOMAS E. HIGGINS
Attorney for Michael Lee

A copy of the foregoing delivered this day to:

ADAM ROSSI
Assigned Assistant United States Attorney